IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00177-WDM-OES

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff(s),

MELISSA R. WOLFF,

Plaintiff-Intervenor,

vs.

JOSLIN DRY GOODS COMPANY d/b/a DILLARD'S ,

Defendant(s).

---

**ORDER** DENYING DEFENDANT'S OBJECTION
TO INTERVENTION BY MELISSA R. WOLFF
AND
**RECOMMENDATION** THAT DEFENDANT'S MOTION
TO STAY PENDING ARBITRATION BE GRANTED

---

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated: September 22, 2005

### BACKGROUND AND SUMMARY OF RULING

This case was filed by the EEOC.  It alleges in its Complaint a single claim for

relief, asserting that a charging party was subjected to sexual harassment by

defendant Dillard's Assistant Store Manager, in violation of the charging party's rights

under Title VII.  42 U.S.C. § 2000e *et seq.*    The charging party was not named in the

Complaint.

On March 4, 2005, Melissa R. Wolff filed a Motion to Intervene as Party Plaintiff. In her motion, she identified herself as the charging party, and asserted that she was entitled to intervene as a matter of right, citing Fed.R.Civ.P. 24(a)(1) and 42 U.S.C. § 2000e-5(f)(1) ("The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission. . . ."). I granted her motion to intervene on March 15, 2005.

On May 4, 2005, Dillard's filed an objection to the order granting Ms. Wolff's intervention, and contemporaneously moved the court to stay these proceedings pending arbitration of her claim. Dillard's stated in its motion that Ms. Wolff was not entitled to pursue her claim in this court because she had entered into a contract with Dillard's whereby she agreed to submit her claim to arbitration. Dillard's attached to its motion a copy of the agreement that had been signed by Ms. Wolff. *See* Defts' Obj'n/Mtn, Ex. E.

On June 1, 2005, the EEOC and Ms. Wolff (jointly, "plaintiffs") filed a Joint Response to Dillard's motion. They argued that Dillard's objection to intervention should be overruled because Ms. Wollf is entitled under both the federal rule and the Title VII statute to intervene as a matter of right.

Plaintiffs also argued in their Response that Dillard's motion for stay should be denied for three reasons. One, although plaintiffs admit that Ms. Wolff signed the page in which she agreed to resolve "any all disputes with the Company" through arbitration, plaintiffs argue that she should not be bound by this agreement because she did not receive a copy of the Rules of Arbitration that are referenced in the agreement. Two,

plaintiffs argue that the sexual harassment about which they complain occurred before she had actually entered into employment with Dillard's, and, for that reason, "Ms. Wolff's Title VII claim, based on a pattern of sexual harassment which began **before** the effective date of any alleged arbitration agreement, is not subject to arbitration." Resp. at 2, emphasis in original.  Three, in plaintiffs' words, "Ms. Wolff cannot be compelled to arbitrate her Title VII claims because she can only litigate these claims as an intervenor in the EEOC's lawsuit, and the EEOC, which is not party to the arbitration agreement, will not consent to litigate its claim to arbitration." Id. at 15.

**Summary of ruling.**  I find that the issues were adequately briefed by the parties, and that oral argument will not be of assistance.  I will deny plaintiffs' request for a hearing.

I agree with plaintiffs that Ms. Wolff is entitled as a matter of right to intervene in this case.  For that reason, I will overrule defendant's objection to that motion.  However, I agree with Dillard's that Ms. Wolff has entered into a contract with Dillard's whereby she agreed to resolve "any and all disputes with the Company" through arbitration.  For that reason, I will recommend to District Judge Walker Miller that he grant Dillard's Motion to Stay these proceedings as to Ms. Wolff only.  Because the EEOC is not a party to the agreement to arbitrate, it is not bound by its provisions; therefore, litigation may continue as between the EEOC and Dillard's.

## DILLARD'S OBJECTION TO INTERVENTION

Dillard's does not dispute that Ms. Wolff is the aggrieved person or the charging party who is described in the EEOC's Complaint.  Under both the federal rules and the

3

statute, she is entitled as a matter of right to intervene in this action.  *See* Fed.R.Civ.P. 24(a)(1); 42 U.S.C. § 2000e-5(f)(1); *see also* Equal Employment Opportnity Commission v. Rappaport, 273 F.Supp.2d 260, 263 (E.D.N.Y. 2003), and cases cited there.  Thus, I will deny Dillard's objection to intervention.

## STANDARDS IN REGARD TO ARBITRATION AGREEMENTS

Numerous courts, including the Tenth Circuit Court of Appeals, have described the standards that trial courts must apply in weighing the enforcement of an arbitration agreement.  The Federal Arbitration Act creates a strong federal policy favoring arbitration.  Id.  The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Indeed, the Act 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  Rappaport, 273 F.Supp.2d at 264, *quoting* World Crisa Corp. v. Armstrong, 129 F.3d 71, (2d Cir. 1997).

The Tenth Circuit has stated:

> The Supreme Court has held that an employee can be required to arbitrate federal claims for employment discrimination if he or she has contracted to do so.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (holding that plaintiff's ADEA claim was subject to arbitration).  "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 , 105 S.Ct.

> 3346, 3353, 87 L.Ed.2d 444 (1985).  This presumption in
> favor of arbitrability also applies "where a party bound by an
> arbitration agreement raises claims founded on statutory
> rights."  Id.; see also Metz v. Merrill Lynch, Pierce, Fenner &
> Smith, 39 F.3d 1482, 1487-88 (10th Cir. 1994) (evaluating
> arbitrability of Title VII claims).  Although the parties' intent
> controls regarding whether they agreed to arbitrate a
> particular dispute, determining their intent is a question of
> law for the court to decide.  See Mitsubishi Motors, 473 U.S.
> at 626, 105 S.Ct. at 3353-54.

Armijo v. Prudential Insur. Co., 72 F.3d 793, 797 (10th Cir. 1995).

## DISCUSSION

### 1.  Plaintiff's failure to receive the

### referenced Rules of Arbitration.

### (a)

The parties agree that I must look to state contract law in order to determine

whether the parties here agreed to arbitrate Ms. Wolff's claim.  See Resp. at 8; Reply at

2.  In that vein, plaintiffs argue that "[i]n Colorado, it is well settled that to be

enforceable, a contract must be sufficiently specific so that the judiciary can understand

the obligation assumed and enforce the promise according to its terms."  Id., citing Hoyt

v. Target Stores, 981 P.2d 188, 194 (Colo.App. 1998).

Plaintiffs assert, and Dillard's does not dispute, that at the time that Ms. Wolff

commenced her employment with Dillard's, she was provided a one-page document

that is headed, "AGREEMENT TO ABRITRATE CERTAIN CLAIMS."  Deft's Mtn, Ex. E

(caps and underlining in original).  The document begins with an explanation of the

arbitration process, and states that "[t]he arbitration process offers a quick and fair way

5

to resolve disagreements related to employment." Id.  The contractual portion states:

> Whereas, Associate and Company desire to resolve any and all disputes with Company, as more fully described below; and
>
> Whereas, the parties hereto agree that Arbitration of such disputes is a valuable benefit, the existence of which is a significant inducement for Associate to accept employment with Company and for Company to offer employment to Associate,
>
> NOW THEREFORE, in consideration of the mutual promises contained herein and in specific consideration of the Company agreeing to employ Associate the parties hereto agree as follows:
>
> Effective upon Associate's first day of employment with the Company, Associate and Company shall be entitled to the benefits of and mutually agree to become subject to the RULES OF ARBITRATION (The "RULES") described below, and attached to and incorporated in this Agreement.

Id.

Plaintiff admits that she signed this one-page agreement.  However, she asserts that a copy of the Rules of Arbitration were not attached to her one-page sheet, and that she was never provided a copy of the Rules until the commencement of this lawsuit.  Plaintiffs argue that "a document which the employee was unaware of during his employment, cannot form the basis for a contract between the employee and employer."  Resp. at 8.  In their view, "Defendant has provided no evidence that Ms. Wolff agreed to the terms set forth in the twelve-page 'Rules of Arbitration. . . , [and] the one-page 'Agreement to Arbitrate Certain Claims,' standing alone is not sufficiently

6

definite to be enforceable, because it is only an agreement to abide by the 'Rules of Arbitration.'" Id. at 10.

Defendant argues that under standard principles of contract in Colorado, Ms. Wolff "is presumed to know the contents of a contract that [she] signed." Reply at 2, *citing*, Cordillera Corp. v. Heard, 592 P.2d 12, 14 (Colo.App. 1978), *aff'd*, 612 P.2d 92 (Colo. 1980). In support of its argument, Dillard's quotes from two opinions by the Colorado Supreme Court. "[I]n the absence of fraud, one who signs a contract without reading it is barred from claiming she is not bound by what she has signed." B & B Livery, Inc. Riehl, 960 P.2d 14, 138 (Colo. 1998). And "the failure to read and review written materials furnished in connection with signing by a party to a contract in the context of assertion of a breach by the other party has not been excused." Berg v. State Bd. of Agric., 919 P.2d 254, 260 (Colo. 1996). Defendant argues that plaintiff must be presumed to have read the contract, and to have understood the meanings of its terms.

### (b)

Plaintiffs cite to an opinion by the First Circuit, Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., as their principal support for their argument that the arbitration agreement is invalid as to Ms. Wolff because she did not receive the Rules of Arbitration that were referenced in the one-page document that she signed. 170 F.3d 1 (1st Cir. 1999). Plaintiff in the Rosenberg case was a securities broker, and she signed a standard securities industry form known as the U-4 Form, agreeing to arbitrate

certain claims after being hired by Merrill Lynch.  The form itself did not state which claims were to be arbitrated, but rather referred to the rules of various organizations with which Rosenberg was registering, such as the NYSE and the NASD.  After she was terminated and initiated Title VII claims against Merrill Lynch, Rosenberg made the same claim that is being made by Ms. Wolff here.  She argued that she was not given a copy of the rules of arbitration to which reference was made in the U-4 Form, and, therefore, she could not be compelled to comply with contractual terms that she had never seen.

The First Circuit agreed with the arguments of Rosenberg.  However, I disagree that the Rosenberg opinion provides support for Ms. Wolff's position here.

Over a strongly-worded dissent, the majority noted that the U-4 Form stated that Rosenberg agreed to arbitrate "any dispute, claim or controversy that may arise . . . *that is required to be arbitrated under the rules constitutions, or by-laws of the organizations indicated in Item 10*."  Id. at 18, emphasis supplied by First Circuit.  The First Circuit found it notable that

> [t]he agreement did not state that Rosenberg agreed to arbitrate all disputes, or even *any* disputes.  The agreement only required Rosenberg to arbitrate any dispute that the NYSE's rules, constitution, or by-laws (or those of any of the organizations listed in item 10) required to be arbitrated.

Id., emphasis in original.  For this reason, the First Circuit determined that Rosenberg had not received adequate notice of the claims that would be subject to arbitration.  Id.

However, the First Circuit then stated, "[h]ad the U-4 provided for arbitration of *all* disputes, or given explicit notice that employment disputes were subject to

8

arbitration, we would have had little difficulty in finding that Rosenberg had agreed to arbitrate her employment discrimination claims within the meaning of the 1991 CRA [Civil Rights Act]."  Id.  In other words, the First Circuit held that the agreement for Rosenberg to arbitrate her claims was not enforceable because she had not received notice of the claims that would be subject to arbitration; but the agreement *would have been enforceable*, even if Rosenberg had not received the subject rules for arbitration of the various entities, if the U-4 Form had "provided for arbitration of *all* disputes."  Id. Here, the contract between Ms. Wolff and Dillard's satisfies that requirement.  The contract states: "Associate and Company desire to resolve *any and all disputes with Company*. . . ."  Deft's Mtn, Ex. E.  Thus, given the facts of this case, the First Circuit would have reached a different result.

One court in this district addressed this same issue, in regard to the same U-4 Form, and reached a different conclusion than the court in Rosenberg.  Ludwig v. Equitable Life Assur. Society, 978 F.Supp. 1379, 1382 (D.Kan. 1997).  The court stated in its holding:

> Plaintiff also claims she could not have knowingly agreed to arbitration because she did not receive a copy of the NASD Code when she signed the first Form U-4 in 1990. This argument fails as well.  First, plaintiff has alleged only that she did not receive a copy of the NASD Code, not that she was denied a NASD Code.  Second, the arbitration provision stated that plaintiff agreed "to arbitrate *any* dispute, claim or controversy that may arise between me and my firm." [Citation omitted.] Defendant correctly observes that regardless of whether plaintiff received the NASD Code, the potential breadth of the arbitration provision immediately put her on notice that any and all employment disputes were subject to mandatory arbitration.

9

Id.; *see also* Herko v. Metropolitan Life Ins. Co., 978 F.Supp. 141, 146 (W.D.N.Y. 1997)

(addressing the U-4 Form, and holding that "the fact that plaintiff may not have been

provided with the relevant rules and regulation governing the arbitration clause found in

the Form U-4 is irrelevant as under New York law, absent fraud or other wrongdoing, a

person who signs a contract is conclusively presumed to know its contents and to

assent to them"); *and see also, though unpublished,* Dexter v. Prudential Insur. Co.,

215 F.3d 1336, 2000 WL 728821 (10th Cir. 2000) (rejecting the same Form U-4

argument, and finding that under "the well-settled rules of contract law [ ] a party to an

agreement is charged with knowledge of the terms of the agreement").

Applying the above principles to the circumstances presented here leads to the

conclusion that virtually all courts would hold that Ms. Wolff was on notice that *all*

disputes or "disagreements related to employment" would be resolved through

arbitration.  Deft's Mtn, Ex. E.  The Agreement states that any arbitration would be

"subject to the RULES OF ARBITRATION," and states that the Rules are "attached to

and incorporated in this Agreement."  Id.  Like the plaintiff in the Ludwig case, cited

above, Ms. Wolff alleges that she did not receive a copy of the Rules with her one-page

Agreement to Arbitrate.  But she does not allege that she was *denied* a copy of the

Rules.  Because the Agreement clearly references the Rules of Arbitration, and states

that the Rules are "incorporated in this Agreement," the duty was upon Ms. Wolff  to

make further inquiry before signing the Agreement if the Rules themselves were of

concern to her.  Having failed to make further inquiry, she cannot complain now that

she was deprived of the ability to peruse the rules before making her decision in regard

10

to employment with Dillard's.

Plaintiffs argue that Ms. Wolff should be relieved of the consequences of her contract with Dillard's because Dillard's apparently provided two different versions of the Rules in discovery.  Resp. at 2.  Counsel for Dillard's explains in his Reply that the sending of an erroneous set of the Rules to plaintiffs was a "simple mistake" by his office.  Reply at 6, n 1.  At any rate, since Ms. Wolff received neither set of Rules at the time she signed the contract, the point appears to be moot.

In summary, I find and conclude that Ms. Wolff entered into a valid and enforceable agreement with Dillard's.  The Agreement provides that any claims brought against Dillard's by Ms. Wolff must be submitted to arbitration for resolution.

## 2.  Alleged harassment occurred before
## the arbitration agreement was signed.

Plaintiffs argue that Ms. Wolff's claims are not subject to arbitration because the pattern of harassment began before the effective date of the Agreement to Arbitrate Claims.  Plaintiffs assert, "Defendant's assistant store manager [ ] began sexually harassing Ms. Wolff on the day she applied for a job. . ., **before** she was hired and **before** she signed the 'Agreement to Arbitrate Certain Claims' and other preliminary forms. . . ."  Resp. at 14.

Frankly, I fail to understand this argument.  Parties can agree to submit *any* dispute to arbitration at *any* time – whether before, during or after the dispute arises.  When she was hired, and when she signed the Agreement to Arbitrate, Ms. Wolff knew that any disputes she had with Dillard's, regardless of the date they arose, would be

11

subject to that Agreement.  The Agreement explicitly states that the parties agreed to

resolve "any and all" disputes between employee and Dillard's through arbitration.

If plaintiffs intend for their emphasis to be on the fact that Ms. Wolff was not an

employee of Dillard's when the offensive conduct occurred, I fail to understand how she

could bring a Title VII claim at all, since Title VII requires an employment relationship

between a plaintiff and her employer.  As Dillard's noted in its Reply, "to bring a Title

VII claim against Dillard's, Ms. Wolff 'must prove the existence of an employment

relationship in order to maintain a cause of action under Title VII.'" Reply at 7, *quoting*

Aguirre v. McCaw RCC Communications, Inc., 953 F.Supp. 1222, 1225 (D.Kan. 1997).

If Ms. Wolff continues to insist that she was not employed by Dillard's at the time that

the offensive conduct occurred, she should drop her claim.

### 3.  Whether Ms. Wolff can litigate her claim
### separate from the EEOC, either in court or in arbitration.

Plaintiffs argue that "Ms. Wolff cannot be compelled to arbitrate her Title VII

claims because she can only litigate these claims as an intervenor in the EEOC's

lawsuit, and the EEOC, which is not party to the arbitration agreement, will not consent

to litigate its claim to arbitration."  Resp. at 15.  In plaintiffs' view, the EEOC cannot be

compelled to arbitrate; and the EEOC has preempted plaintiff's right to right to bring a

lawsuit in a judicial forum.  Plaintiffs claim that it therefore follows that Ms. Wolff "can

only litigate [her] claims as an intervenor in the EEOC's lawsuit."  Id.

I note at the outset that the party resisting arbitration bears the burden of proving

that the claims at issue are unsuitable for arbitration.  *See* Gilmer v. Interstate/Johnson

Lane Corp., 500 U.S. at 24.  The logic of plaintiffs' position escapes me.  Granting to

plaintiffs their major and minor premises – that is, (1) the EEOC cannot be compelled to

arbitrate, and (2) the EEOC has preempted plaintiff's right to sue –  the syllogism

simply does not lead to the conclusion posited by plaintiffs, that Ms. Wolff "can only

litigate [her] claims as an intervenor" in this lawsuit, and, therefore, *must* be permitted

to litigate her claims in this lawsuit.

    First, the EEOC has not shown that Ms. Wolff is a necessary party to this

lawsuit.  Indeed, the EEOC brought the suit without her as a co-plaintiff, and did not

even identify her in its Complaint.  Ms. Wolff is not a necessary party to this lawsuit,

and may or may not be needed as a witness, depending upon the evidence available to

the EEOC.  After all, the EEOC takes the position that it is empowered to bring lawsuits

even when the offended party does not wish to pursue any action.  *See* EEOC v. Waffle

House, Inc., 534 U.S. 279, 291 (2002)

    Second, Ms. Wolff has contracted away her rights to bring a lawsuit against

Dillard's in a judicial forum.  The EEOC has not provided any case law that holds or

suggests that the EEOC can void a contract between an employee and employer

through the device of filing an independent action pursuant to 42 U.S.C. § 2000e-5(f).

    Third, the EEOC argues that "it does not make sense to have the employee

litigating in arbitration on the same facts the EEOC is litigating in court."  Resp. at 16.

Whether it makes sense or not is irrelevant, but it does not compel the conclusion that

Ms. Wolff must be allowed to litigate her claims in court when she has contracted away

that right.  She knew before she filed her motion to intervene that she had contracted

13

away that right.

Fourth, as Dillard's has argued in its Reply, other courts have held that a charging party's dispute with an employer must be submitted to arbitration even though the EEOC has filed its own suit.  <u>EEOC v. Woodmen of the World Life Ins. Co.</u>, 330 F.Supp.2d 1049, 1056 (D.Neb. 2004) (ordering stay pending arbitration, and finding that EEOC is not subject to the arbitration agreement); <u>EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.</u>, 273 F.Supp.2d 260 (E.D.N.Y. 2003) (same).  Plaintiffs argue that the facts of these cases are "dissimilar" to those presented here.  I find to the contrary.  The facts appear to be virtually identical.

Plaintiffs have brought to my attention through a supplemental filing that the district judge in the <u>Woodmen</u> case, Hon. Joseph F. Bataillon, reversed himself, and issued a subsequent order in which he declined to enforce the arbitration agreement that the charging party, Rollins, had signed.  *See* Pltf's Add'l Supp. [Doc. 24-2, filed August 31, 2005], and slip op. attachment.  Judge Bataillon stated that he was reversing his decision for three reasons.  (1) Rollins, demonstrated that she lacked sufficient funds to arbitrate her claims on her own, and that she would be able to relieve the financial burdens by "piggybacking" the discovery and litigation costs that would be paid by the EEOC.  (2) Rollins had filed for bankruptcy.  And (3), after additional argument from the EEOC, Judge Bataillon found himself persuaded by its arguments, concluding that "the structure that allows [the EEOC] to pursue its interest on behalf of the public will be harmed if intervenors are required to arbitrate their claims."  <u>Id</u>., slip op. at 4.  Judge Bataillon denied Woodmen's motion to compel arbitration.

14

With all due respect, I disagree with Judge Bataillon's decision to reverse course.  I am not persuaded that the reasons offered in his opinion justify a refusal to enforce the arbitration agreement.

The issues of costs or bankruptcy are not involved in this present case, and the effect they played in Judge Bataillon's decision is not made clear.  The question of the costs of arbitration is addressed by the Supreme Court in <u>Green Tree Financial Corp. v. Randolph</u>, 531 U.S. 79, 90 (2000).  The Court held in <u>Green Tree</u> that whether courts may deny a request to compel arbitration because of financial burdens is a question that is fact specific.  <u>Id</u>. at 92.  The Court stated, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  <u>Id</u>.  However, the Court emphasized that, "[t]o invalidate the agreement on [the basis of costs] would undermine the 'liberal federal policy favoring arbitration agreements.'"  <u>Id.</u> at 91.

Judge Bataillon left unsaid his reason for premising his denial of arbitration on the fact that Rollins had filed for bankruptcy.  The EEOC and Rollins argued that Rollins' bankruptcy would "prohibit[] her going forward with arbitration."  Pltf's Add'l Supp., slip op. at 3.  However, the opinion does not state why this would be so.  Arguably, even if Rollins no longer owned her claim, and it had been assumed by the trustee in bankruptcy, the arbitration agreement still would appear to be enforceable, whether against Rollins or the trustee.

The primary reason for Judge Bataillon's reversal appears to spring from his

reconsideration of the Supreme Court's decision in <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. at 291.  The EEOC argued to Judge Batailon, as it has argued here, that <u>Waffle House</u> holds that arbitration agreements, in effect, become void, and must be denied enforcement, whenever the EEOC  files an enforcement action.  I disagree that the Supreme Court's opinion warrants such a conclusion.

The Fourth Circuit Court of Appeals ruled in <u>Waffle House</u> that an arbitration agreement did not prevent the EEOC from filing an enforcement action in regard to the claims of a victim of discrimination, but it also ruled that the EEOC was limited in the relief it could seek to that which would be in the public interest.  Thus, the Fourth Circuit held that the EEOC was barred from pursuing relief that would be specific to the victim.  The victim, or charging party, in the <u>Waffle House</u> case was not a party to the judicial proceedings.  <u>Id</u>. at 283.

Upon review of the Circuit Court opinion, the Supreme Court approved the Circuit Court's decision to allow the EEOC to proceed with its enforcement action, even though the charging party had entered into a contract for arbitration.  It stated that the question that was being considered for resolution was "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the [EEOC] from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in a [civil rights] enforcement action."  <u>Id</u>. at 282.

The Court concluded that arbitration agreements could not prevent the EEOC from seeking victim-specific relief.  However, the Court emphasized in its decision, as it has in numerous cases, that arbitration contracts "'shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,'" id. at 289, *quoting* 9 U.S.C. § 2, and reiterated that "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." Id., *citing* 9 U.S.C. § § 3 and 4.

If the mere filing of an enforcement action by the EEOC constituted sufficient "grounds as exist at law or in equity" to set aside an arbitration agreement, surely the Supreme Court would have said so, because the question of the balance between arbitration agreements and the EEOC's enforcement powers was the very issue that it was addressing.  Instead, the Supreme Court's opinion appears to proceed upon the presumption that *both* arbitration proceedings *and* the EEOC's enforcement action may proceed simultaneously.

The sole point made by the Court in its opinion is that an arbitration agreement may not limit either the ability of the EEOC to bring an enforcement action, or the ability of the EEOC to seek victim-specific relief.   Nowhere in Waffle House does the Supreme Court state or hint that upon the filing by the EEOC of an enforcement action, the charging party is thereby relieved of her obligation to arbitrate if she has signed a contract that compels arbitration.  Indeed, quite the contrary is apparent in the Court's opinion, because it discusses its awareness of the fact that conduct or decisions by charging parties may limit the relief that the EEOC may obtain in court, such as, for example, a charging party's settlement of her claim or failure to mitigate.  The Court stated that "[i]t is an open question whether a settlement or arbitration judgment would

affect the validity of the EEOC's claim or the character of relief the EEOC may seek." Id. at 296.

In short, I am not persuaded that the EEOC's filing of an enforcement action relieves Ms. Wolff of her obligation to arbitrate pursuant to the Arbitration Agreement into which she entered with Dillard's.  And I am not persuaded that the Supreme Court in Waffle House held or suggested that the filing of an enforcement action would have the effect of voiding arbitration agreements between employees and employers.  In my view of that case, the Court continued to recognize the viability and enforceability of arbitration agreements, even after the EEOC had filed an enforcement action, and left to a later day any need to straighten out problems or conflicts that may arise as a result of the pursuit of the same claim by different parties in two different forums.

Finally, I take note of the submission by Dillard's of its supplemental authority, consisting of a September 8, 2005, opinion by the Colorado Court of Appeals. Galbraith v. Clark, — P.3d — , 2005 WL 2155251 (Colo.App. 2005).  I do not find the facts of that case to be sufficiently similar to the facts presented here to be of assistance to me.

**In summary**, I recommend that Judge Miller reach the same conclusion, and issue the same ruling, as the court in the Rappaport case (and, had Judge Bataillon not reversed himself, I would have said the same with regard to the Woodmen case).  First, I recommend that Judge Miller find that Ms. Wolff has entered into a valid and enforceable agreement for arbitration with Dillard's, and that he stay all proceedings pending arbitration between Ms. Wolff and Dillard's.  Second, I recommend that he find,

as the court in the <u>Woodmen</u> case found, that "[a] valid arbitration agreement between an employer and employee does not prevent the EEOC from vindicating the public interest," and that the litigation between EEOC and Dillard's may continue. <u>Woodmen</u> at 1056; *see also* <u>Waffle House</u>, 534 U.S. at 284 (acknowledging Circuit Court's holding that the arbitration agreement did not foreclose the enforcement action).

### CONCLUSION

It is therefore ORDERED and RECOMMENDED as follows:

1. It is **ORDERED** that Dillard's objection to Ms. Wolff's Motion to Intervene is **OVERRULED**, and my order granting her intervention remains effective.

2. I **RECOMMEND** to Judge Miller that he **GRANT** Defendant's Motion to Stay Pending Arbitration [filed May 4, 2005], and that he order all proceedings between Ms. Wolff and Dillard's stayed pending arbitration as between those two parties only.

3. The status conference of September 30, 2005, is hereby VACATED.

4. Plaintiffs' Motion Seeking Leave to File Response to Defendant's Submission of Supplemental Authority [Doc. 31, filed September 20, 2005] is GRANTED.

5. Plaintiffs' Request for Oral Argument [Doc. 18, July 8, 2005] is DENIED AS MOOT.

Dated this 22nd day of September, 2005.

BY THE COURT:


  s/O. Edward Schlatter
O. Edward Schlatter
United States Magistrate Judge

19